# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AMY M. STOTTLEMYER,
    Plaintiff,

v.

SYNCREON.US INC.,
    Defendant.

1:17-cv-724

Hon. John E. Jones III

## **MEMORANDUM**

## October 9, 2018

The Plaintiff, Amy Stottlemyer ("Stottlemyer"), brings this action claiming interference with her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, as well as retaliation for exercising her FMLA rights. Presently pending before the Court are cross motions for summary judgment. Stottlemyer, seeks summary judgment as to liability only (Doc. 15) while the Defendant, Syncreon.US Inc. ("Syncreon"), seeks complete summary judgment (Doc. 17).

## I.    FACTUAL BACKGROUND

Stottlemyer began working for Syncreon in August 2010. (Doc. 16-1, ¶ 1). Syncreon is a specialized contract logistics company. (Doc. 19, ¶ 1). Syncreon's facility in York, Pennsylvania, provides sequencing and subassembly services to Harley Davidson, which is Syncreon's only customer in York. (*Id.* at ¶ 2). For several months each year, Syncreon hires additional workers on a temporary basis

1

to handle a "surge" in Harley Davidson's motorcycle production. In January 2014, Stottlemyer was promoted to junior quality engineer. (Doc. 16-1, ¶ 2). As a junior quality engineer, Stottlemyer worked on the day shift. (*Id.* at ¶ 3).

In August 2016, Stottlemyer began to experience side effects from a Depo-Provera shot. (Doc. 19, ¶ 11). Syncreon was a covered employer under the FMLA, and Stottlemyer was an eligible employee under the FMLA. (Doc. 16-1, ¶¶ 4, 5). As a result of her health condition, Stottlemyer requested FMLA leave in August 2016, which Syncreon granted. (*Id.* at ¶ 6).

At some time prior to Stottlemyer's leave, Harley Davidson advised Syncreon to reduce its salaried workforce to meet lower production demands. (Doc. 19, ¶ 16). During Stottlemyer's leave, a quality engineer[1] from night shift was moved to day shift. (Doc. 16-1, ¶ 8).

On October 27, 2016, Stottlemyer returned to Syncreon without medical restrictions or limitations. (*Id.* at ¶ 9). That same day, Stottlemyer met with Carol Colna ("Colna"), the regional human resources manager, and Jesse Chronister ("Chronister"), the senior quality engineer. (Doc. 19, ¶ 32). Colna informed Stottlemyer that she had been selected for an upcoming reduction in force and that her position had been eliminated from day shift. (*Id.* at ¶ 33; Doc. 16-1, ¶ 10).

---

[1] Stottlemyer's statement of facts describes this individual as a "male" quality engineer, and repeatedly refers to genders and her status as the only female junior quality engineer throughout her motion and briefs. We note, however, that Stottlemyer makes no gender-based discrimination claims.

Colna presented Stottlemyer with the option of taking a night-shift junior quality engineer position that would terminate after the surge period, or to accept an immediate layoff. (Doc. 19, ¶ 35). Stottlemyer accepted the temporary night-shift position. (*Id.* at ¶ 36). The night-shift position was at the same rate of pay and came with the same benefits as her prior day-shift position. (*Id.* at ¶ 37). Colna also instructed Stottlemyer to keep the meeting confidential, as other positions at Syncreon would be impacted by Harley Davidson's reduced production. (*Id.* at ¶ 38). Stottlemyer agreed to keep the meeting confidential. (*Id.* at ¶ 39).

After the meeting, Stottlemyer spoke with two co-workers and told them that she was moving to night shift and would be terminated after surge. (*Id.* at ¶ 40-41). On October 28, 2016, Chronister informed Colna, Kyle Gepfer ("Gepfer"), manager of the quality department, and Maylene Fuentes ("Fuentes"), human resources manager, that Stottlemyer had shared information from the meeting with co-workers. (*Id.* at ¶ 43). Two days later, Stottlemyer began working the night shift. (Doc. 16-1, ¶ 12).

On November 1, 2016, Gepfer and Fuentes met with Stottlemyer to discuss the claim that she had spoken of information learned during the confidential meeting. (Doc. 19, ¶ 44). Stottlemyer admitted she told coworkers that she was moving to night shift and would be terminated after surge. (*Id.* at ¶ 45). Syncreon

terminated Stottlemyer's employment on November 4, 2016, citing breach of confidentiality. (*Id.* at ¶ 46).

## II. PROCEDURAL HISTORY

Stottlemyer initiated this action by filing a Complaint on April 27, 2017, alleging interference with her FMLA rights and retaliation for exercising her FMLA rights. (Doc. 1). The case was referred to mediation on June 30, 2017, (Doc. 11), which was unsuccessful. (Doc. 14). Stottlemyer filed the instant Motion for Partial Summary Judgment on July 31, 2018. (Doc. 15). Syncreon filed its Motion for Summary Judgment on August 1, 2018. (Doc. 17). Both motions have been fully briefed, (Docs. 16, 18, 24, 26, 28, 29), and are ripe for review.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a fact is "material" only if it might affect the outcome of the action under the governing law. *See Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 172 (3d Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court should view the facts in the light most favorable to the non-

moving party, drawing all reasonable inferences therefrom, and should not evaluate credibility or weigh the evidence. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

Initially, the moving party bears the burden of demonstrating the absence of a genuine dispute of material fact, and upon satisfaction of that burden, the non-movant must go beyond the pleadings, pointing to particular facts that evidence a genuine dispute for trial. *See id.* at 773 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In advancing their positions, the parties must support their factual assertions by citing to specific parts of the record or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. Civ. P. 56(c)(1).

A court should not grant summary judgment when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them. *See Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citing *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Layshock ex rel. Layshock v.*

*Hermitage Sch. Dist.*, 650 F.3d 205, 211 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 247-48) (internal quotation marks omitted).

**IV. ANALYSIS**

Although Stottlemyer's interference and retaliation claims are premised on the same allegations, each claim requires a different analysis. We will begin with the interference claim.

**A. Interference Claim**

To prove a claim for interference with FMLA benefits, a plaintiff "only needs to show that he was entitled to benefits under the FMLA and that he was denied them." *Sommer v. The Vanguard Group*, 461 F.3d 397, 399 (3d Cir. 2006) (quoting *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005)). Notably, FMLA regulations limit the benefits to which an employee is entitled to those the employee would have received had he or she not taken FMLA leave. 29 C.F.R. § 825.216(a). In other words, a change in the status or conditions of employment that is unrelated to the FMLA leave and would have occurred regardless of the leave does not sustain a claim for interference. *See Atchison v. Sears*, 666 F.Supp.2d 477, 489 (E.D.Pa. 2009).

In stating an interference claim, "the employee need not show that he was treated differently than others[, and] the employer cannot justify its actions by establishing a legitimate business purpose for its decision." *Id.* (quoting 430 F.3d

6

at 119-120). "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Id.* (quoting 430 F.3d at 120). Thus, "[b]ecause the FMLA is not about discrimination, a *McDonnell-Douglas* burden shifting analysis is not required."[2] *Id.*

Syncreon argues that the interference claim is merely duplicative of the retaliation claim because Stottlemyer bases both claims on identical allegations. Furthermore, Syncreon notes that Stottlemyer styles the allegations as retaliatory.[3] Thus, Syncreon suggests that the Court should dismiss the interference claim. Stottlemyer counters that the Third Circuit has construed a discharge, at least, as indicative of *either* interference or retaliation, and that a plaintiff is entitled to pursue either theory. (Doc. 26, p. 4) (c*iting Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (holding that discharge in violation of the FMLA "may constitute interference with the employee's FMLA rights as well as retaliation against the employee")).

Based on the record before us, however, we find it unnecessary to wade into the question of whether Stottlemyer may proceed under either theory.

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), set forth a shifting burden framework for discrimination cases. First, the plaintiff must establish a prima facie case. The burden then shifts to the defendant to show a legitimate, non-discriminatory reason for the adverse action. Finally, the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely a pretext for discriminatory intent.
[3] Stottlemyer even describes the conduct as "retaliatory" within the count for interference.

7

Stottlemyer's interference claim fails because she was not entitled to reinstatement. Members of Syncreon's management stated that Harley Davidson instructed Syncreon to reduce its salaried workforce in response to Harley Davidson's lowered production goals. (Colna Dep. 12:9-13; Gepfer Dep. 21:12-16). Stottlemyer's position had been selected for that reduction at some point while she was on leave. (Colna Dep. 22:12-25, 26:11-24). Gepfer explained that Stottlemyer had been selected because the other junior quality engineer, Kyle Gift ("Gift"), had a more diverse background, which Gepfer found desirable. (Gepfer Dep. 42:7-16). Stottlemyer has not offered any evidence to rebut these statements. The evidence, therefore, indicates that Stottlemyer's position would have been eliminated regardless of whether she had taken FMLA leave. Consequently, she was not entitled to be reinstated upon her return from leave, and her interference claim necessarily fails.

### B. Retaliation Claim

We turn now to Stottlemyer's claim for retaliation. To state a claim of retaliation, a plaintiff must show that "(1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." *Conoshenti v. Public Service Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004). There is no genuine dispute that Stottlemyer has satisfied the first

two elements.[4] We also find that Stottlemyer has established the third element. The undisputed facts indicate that Stottlemyer was given a choice the same day she returned from leave to accept an immediate layoff or a temporary position on night shift. (Doc. 22, ¶ 11). She accepted the temporary position and approximately one week later, was terminated. (*Id.* at ¶¶ 12, 13). The record further shows that she was the only person in the quality department to have taken FMLA leave, (Gepfer Dep. 41:25-42:4), that she had not been subject to any prior disciplinary actions or poor performance reviews, (Fuentes Dep. 30:2-7), and that she had more experience as a junior quality engineer than Gift, whom Syncreon had retained, (Gepfer Dep. 40:16-22). The record, therefore, supports a prima facie case of retaliation.

With Stottlemyer having stated a prima facie case, the burden shifts to Syncreon to show a legitimate, non-discriminatory reason for the adverse employment actions. Here, Syncreon has clearly met its burden, as well. As noted earlier, with respect to Stottlemyer's move to a temporary night shift position, Syncreon managers stated that the action was taken in response to a personnel reduction required by Harley Davidson. Further, Stottlemyer was specifically chosen for reduction over Gift because Gift had additional experience with another

---

[4] Although Syncreon briefly argues that moving Stottlemyer from day shift to night shift is not an adverse employment action, there is no doubt that her subsequent termination was. Given that Stottlemyer only alleges a single count of retaliation, to include moving her from a permanent day shift position to a temporary night shift position, as well as her eventual termination, we find that the undisputed facts show the second element was satisfied.

9

department, which Gepfer determined to be more valuable.  With respect to Stottlemyer's eventual termination, Syncreon managers testified that Stottlemyer breached an agreement of confidentiality by sharing information learned during her meeting with human resources and managers.  (Chronister Dep. 30:14-18; Gepfer Dep. 18:25-19:3; Colna Dep. 54:10-11).  We find, therefore, that Syncreon has adequately stated a legitimate, nondiscriminatory reason.

With Syncreon having proffered a reason for the employment action, the burden again shifts to Stottlemyer to show that Syncreon's reason is merely pretextual.  "To avoid summary judgment . . . after the employer has proffered a legitimate nondiscriminatory reason for an adverse employment action, the plaintiff . . . must produce evidence which: (1) casts sufficient doubt upon each proffered reason so that a fact finder could reasonably conclude that each reason was fabrication, or (2) allows a fact finder to infer that discrimination was more likely than not a motivating or determinative cause of action." *Morrissey v. Luzerne County Community College*, 117 F.App'x 809, 812 (3d Cir. 2004) (citing *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994)).  "To discredit the employer's proffered reason, the plaintiff cannot merely show that 'the employer's decision was wrong or mistaken.'" *Id.* at 813 (quoting *Fuentes*, 32 F.3d at 765).  "Rather, the plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for

its action that a reasonable fact finder could rationally find them unworthy of credence.'" *Id.* (citing *Fuentes*, 32 F.3d at 765).

Stottlemyer first argues that the temporal proximity between her leave and the adverse employment actions support her assertion of pretext. "[W]hen only a short period of time separates an aggrieved employee's protected conduct and an adverse employment decision, such temporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn." *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (quoting *Fasold v. Justice*, 409 F.3d 178, 190 (3d Cir. 2005)). Here, Syncreon informed Stottlemyer the day she returned from leave that she must either accept an immediately layoff or a temporary position on night shift. Furthermore, within only one week of returning, Syncreon terminated Stottlemyer. While we agree the timing is short, we do not find that this argument casts sufficient doubt on the proffered explanation. Harley Davidson instructed Syncreon to put the reductions into effect by around October 3, 2016. (Gepfer Dep. 49:10-18). Syncreon informed Stottlemyer that she had been selected for reduction once she returned from leave on October 27, 2016. Furthermore, as stated earlier, Syncreon gave Stottlemyer an opportunity to remain with the company through the end of the surge period, rather than simply terminating her. Given the close proximity between when Harley Davidson

11

wanted the reductions to occur and when Syncreon informed Stottlemyer of her selection, we do not find Syncreon's explanation to be dubious.

Stottlemyer also suggests that her selection itself was suspect because she had more experience as a junior quality engineer than Gift. However, Stottlemyer offers nothing to contradict Gepfer's explanation that he retained Gift over Stottlemyer because Gift had experience in another department that would also see reductions. Stottlemyer merely argues that Gepfer's explanation is questionable because Gift was not actually needed to help in multiple departments. (Gepfer Dep. 42:20-43:6). We find this argument entirely unpersuasive. The fact that Gift's diverse background may not have been needed does not cast a shadow on Gepfer's explanation that he placed more value on that diverse experience when making his selection. Thus, on this point, Stottlemyer has failed to show pretext.

With respect to her termination, Stottlemyer argues that Syncreon's breach-of-confidentiality explanation is pretextual for several reasons: (1) the information given to Stottlemyer, and which she shared, could not reasonably be considered confidential, (2) members of management for Syncreon could not agree on what specific information Stottlemyer shared that led to her termination, and (3) Syncreon personnel did not conduct a sufficient investigation before terminating Stottlemyer. We will address each argument in turn.

12

Stottlemyer first suggests that the information she shared could hardly be considered confidential because her co-workers obviously would see that she had moved to night shift and would eventually leave the company. This argument, however, merely suggests that Syncreon's confidentiality requirement was nonsensical. As noted earlier, a plaintiff cannot show pretext simply by arguing that the employer was wrong or mistaken. Although Stottlemyer may have a valid point that requiring her to remain silent about her shift change would be pointless, that does not show pretext. Stottlemyer concedes that Colna instructed her to keep information learned in the meeting confidential, which she agreed to, (Stottlemyer Dep. 58:22-59:2), and she also admits that she shared some of that information with coworkers, (*Id.* at 60:9-61:1).[5] Whether the confidentiality agreement was right or wrong, Stottlemyer admits she agreed to keep information from the meeting confidential and then promptly shared some. Far from demonstrating pretext, Stottlemyer's own admissions reinforce Syncreon's proffered explanation.

Stottlemyer next argues that Syncreon's management could not agree on what information Stottlemyer shared that constituted a breach of confidentiality. Stottlemyer suggests this is a level of inconsistency that casts doubt on the proffered explanation. We disagree. Chronister believed that Stottlemyer told co-

---

[5] The Plaintiff also argues that the information she shared was protected by the National Labor Relations Act and could not be considered "confidential." Again, this argument relates to whether the Defendant was right or wrong in deeming certain information confidential, not whether the Defendant used breach of confidentiality as a pretext.

13

workers "that her position was going to be eliminated and about the reduction with Harley potentially going down to one shift, everything that was to . . . stay confidential." (Chronister Dep. 30:14-18). Gepfer, while not recalling specific details, understood Stottlemyer to have been terminated because of "some items that were communicated during an earlier – during an earlier meeting that the regional HR manager, Carol, asked to not be spoken outside of that meeting." (Gepfer Dep. 18:25-19:3). Colna stated that Stottlemyer had shared information from the meeting about changes that would be occurring. (Colna Dep. 54:10-11). While these employees may not agree on precise details, they all agree that Stottlemyer shared information from the meeting, which she had agreed to keep confidential. Stottlemyer does not dispute this fact. We fail to see, therefore, how this casts sufficient doubt on the proffered explanation.

Finally, Stottlemyer argues that the proffered explanation is pretextual because Syncreon did not investigate the breach of confidentiality beyond what Stottlemyer admitted to. Syncreon's management, however, consistently testified that the meeting with Stottlemyer was to be confidential, and that Stottlemyer admitted to sharing information from the meeting. As stated above, it may be that the information Stottlemyer shared was innocuous and Syncreon made a poor decision in terminating her for it. That question is not before us. The issue is whether Syncreon used breach of confidentiality as a cover for a retaliatory action.

Stottlemyer has not shown reason to doubt Syncreon's explanation. Therefore, we find that Stottlemyer has not carried her burden to show pretext and cannot sustain her claim of retaliation.

V. **CONCLUSION**

For the foregoing reasons, we shall deny Stottlemyer's Motion for Partial Summary Judgment and shall grant Syncreon's Motion for Summary Judgment. A separate order consistent with these findings will follow.